UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TRISHA A. FRITZ,

        Plaintiff,

v.

FINANCIALEDGE COMMUNITY
CREDIT UNION, et al.,

        Defendants.
_____/

Case Number 11-13879
Honorable Thomas L. Ludington

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S TITLE VII FAILURE-TO-PROMOTE CLAIM WITHOUT PREJUDICE**

Plaintiff Trisha Fritz filed a complaint against FinancialEdge Community Credit Union (the "Credit Union") and certain employees of the Credit Union, alleging a failure to promote her to a full-time position based on her gender in violation of Title VII and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), retaliation for complaining of sex discrimination, civil conspiracy to interfere with Plaintiff's right to seek recourse for sex discrimination, wrongful discharge in violation of public policy, an ADA claim, and a Michigan Persons with Disabilities Act claim. ECF No. 2.

Now before the Court is Defendants' motion for partial summary judgment, contending that Plaintiff's failure to promote claims were filed outside the contractually-shortened statute of limitations. In their reply, Defendants alternatively contend that Plaintiff's Title VII failure to promote claim should be dismissed for failing to obtain a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") prior to filing her complaint. ECF No. 10.

A hearing was held on November 22, 2011, to address Defendants' motion. For the reasons

provided herein, the Court will grant in part and deny in part Defendants' motion for partial summary judgment.

**I**

Plaintiff began working for the Credit Union in March 2010 as a part-time mortgage representative. Plaintiff, another female employee, and an outside male applicant applied for a loan officer position in October 2010. The outside male applicant was hired on or about December 17, 2010. After not receiving the promotion, she was told by Defendant Jason Ball that the hiring decision-maker did not like women. Based on this information, Plaintiff posted on Facebook that she did not get the promotion because she was a woman. Plaintiff took down the posting but not before someone at the Credit Union saw it. Plaintiff was advised on or about December 17 that her concerns would be addressed the following Monday. No meeting about Plaintiff's allegation of sex discrimination occurred. In January 2011, Plaintiff received a positive annual review and a wage increase.

The Credit Union instituted a policy limiting the statute of limitations on employment claims later in February 2011. Plaintiff signed the "Knowing and Voluntary Litigation Agreement and Waiver" ("Litigation Agreement"). In the Agreement, the Plaintiff agreed "to litigate any statutory or common law claims" involving her employment according to certain terms. Among those terms, was her agreement that any claim arising out of her employment must be filed "within on hundred and eighty (180) calendar days or less if a statute or common law requires a shorter period, from the date the alleged claim arose." The Agreement further provides that if the Plaintiff fails to abide by the requirement, she "will forever lose [her] right to litigate [her] claim in any manner." ECF No. 3 Ex. A. The Agreement further provides that Plaintiff was "responsible for carefully reading it and

understanding it," and that the Agreement was entered into "voluntarily." In addition, just above the signature provisions, the Agreement indicated, again in boldface type, that the Plaintiff "had the opportunity to ask questions and/or to seek the advice of counsel at his/her expense before signing." ECF No. 3 Ex. A.

Defendant required Plaintiff to submit to a drug test on July 18, 2011, which she failed as a result of being a medical marijuana user. After the drug test, Plaintiff was advised to go home and someone would be in contact with her. Plaintiff remained in contact with the Credit Union but has not been advised that she can return to work. Plaintiff concluded that her employment was terminated and filed the instant case on September 6, 2011.

## II

A motion for summary judgment should be granted if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter

of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III

#### A

Defendants contend that, pursuant to its Litigation Agreement, Plaintiff's failure to promote claims were required to have been filed within 180 days from December 17, 2010, the date Plaintiff alleges her claims accrued.  Defendants argue that provisions such as those included in the Litigation Agreement are valid and enforceable in Michigan, so long as they are clear and unambiguous, and do not violate law or public policy. *Rory v. Continental Ins. Co.*, 473 Mich. 457, 470 (2005). "Reasonableness" is no longer a requirement to enforce such a provision. *Id.* at 470. Furthermore, both Michigan state courts and federal courts applying Michigan law consistently uphold similar 180-day statutes of limitation in employment cases, whether they allege federal or state claims. *See Timko v. Oakwood Custom Coating, Inc*., 244 Mich. App. 234 (2001); *Clark v. DaimlerChryslerCorp*., 268 Mich. App. 138 (2005); *Myers v. Western-Southern Life Ins. Co.*, 849

F.2d 259, 260 (6th Cir. 1988); *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 354-59 (6th Cir. 2004); *see also Boensch v. Delta College*, 2011 U.S. Dist. LEXIS 34512 (E.D. Mich. Mar. 30, 2011). Defendants submit that here, the 180-day limitation was clear and unambiguous and Plaintiff knowingly and voluntarily agreed to it when she signed the Litigation Agreement. Moreover, the fact that the Litigation Agreement was signed after the alleged wrongdoing was known to Plaintiff when she signed the agreement and should have no bearing on the instant motion.

Under Title VII, once an individual files a charge alleging unlawful employment practices, the EEOC must investigate the charge and determine whether there is "reasonable cause" to believe that it is true. *See* 42 U.S.C. § 2000e-5(b) (1998). By filing a charge, an individual does not file a complaint seeking relief but informs the EEOC of possible discrimination. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984). If the EEOC finds reasonable cause to believe that discrimination occurred, it must "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC is unable to procure an acceptable conciliation agreement from the employer, it "may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." 42 U.S.C. § 2000e-5(f) (1998). If the court agrees with the EEOC that the defendant-employer has intentionally engaged in unlawful discrimination, the court may order injunctive relief and such remedies as the reinstatement or hiring of employees, back pay, and compensatory and punitive damages. *See* 42 U.S.C. §§ 1981a(a)(1), 2000e-5(g)(1) (1998).

Where the EEOC investigates a charge and, after 180 days, either concludes that there is no "reasonable cause" to believe discrimination occurs or fails to make a finding of "reasonable cause," the EEOC must notify the aggrieved individual. *See* 42 U.S.C. § 2000e-5(f)(1) (1998). If the EEOC

finds "reasonable cause" to believe an employer has violated Title VII but chooses not to bring suit on behalf of the federal government, the EEOC will issue a "notice of right to sue" on the charge to the aggrieved party. *See* 29 C.F.R. § 1601.28(b) (1998). Or, if after 180 days the EEOC fails to make a "reasonable cause" finding, the aggrieved individual may request a "right to sue" letter from the EEOC. *See id.* An individual may not file suit under Title VII if she does not possess a "right to sue" letter from the EEOC. *See Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998).

Therefore, for 180 days after the filing of a charge, the EEOC retains "exclusive" jurisdiction over the subject matter of that charge. *General Tel. Co. v. EEOC*, 446 U.S. 318 (1980). This 180-day period is "critical to the statutory scheme." *EEOC v. Hearst Corp.*, 103 F.3d 462, 466 (5th Cir. 1997). During that period, the EEOC may distinguish between those cases in which it believes it may vindicate the public interest by filing suit itself, and those in which it chooses not to file suit and instead leaves to the individual aggrieved the decision of whether to file suit in order to advance her own interests. *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir. 1998). It is only at the termination of the 180-day period of exclusive jurisdiction that a "complainant whose charge is not dismissed or promptly settled or litigated" may bring a lawsuit. *See Occidental Life Ins. v. EEOC*, 432 U.S. 355, 361 (1977). Not only does Title VII bar an aggrieved individual from suing a private employer in federal court during that period without authorization from the EEOC, *see Hearst*, 103 F.3d at 466, it bars an aggrieved individual from ever bringing such a suit should the EEOC choose to sue on its own, *Frank's Nursery & Crafts, Inc.*, 177 F.3d at 456. In such instances, the only right Title VII reserves to an aggrieved individual is the right to intervene in the EEOC's action. *See* 42 U.S.C. § 2000e-5(f)(1) (1998). This process was enacted by Congress with

the intent to retain a cause of action for the aggrieved individual while conferring a right of action upon the EEOC in order to avoid duplicitous proceedings. H. Rep. No. 92-238, at 11, *reprinted in* 1972 U.S.C.C.A.N. 2137, 2148.

In relevant part, Plaintiff contends that Title VII claims cannot be subjected to a contractually shortened statute of limitations period of 180 days. Under the reasonableness factors in *Timko v. Oakwood Custom Coating, Inc.*, 244 Mich. App. 234, 239-40 (2001), Plaintiff argues that a limitation may not abrogate her rights. As noted above, mere judicial assessment of "reasonableness" is an invalid basis upon which to refuse to enforce contractual provisions. *Rory*, 473 Mich. at 470. Moreover, the court in *Timko* concluded that "no inherent unreasonableness accompanies a six-month period of limitation" and that, in that case, "the 180-day period of limitation afforded [the] plaintiff adequate time to investigate and file his age discrimination claim." 244 Mich. App. at 242.

Nonetheless, because the EEOC has exclusive jurisdiction for 180 days, Plaintiff argues that any period less than that period of time prevents Plaintiff from litigating her Title VII claim. The law as it relates to a shortened statute of limitations for Title VII claims is unsettled. Plaintiff notes that many Courts have cited to *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352 (6th Cir. 2004) for the principal that Title VII claims may be limited by employment agreements. *See, e.g.*, *Steward v. New Chrysler*, 415 F. App'x 632, 638 (6th Cir. 2011); *Dunn v. Gordon Food Services*, Inc., 780 F. Supp. 2d 570, 575 (W.D. Ky. 2011); *Ellison v. DaimlerChrysler Corp.*, 2007 U.S. Dist. LEXIS 80227, at *5 (N.D. Ohio Oct. 30, 2007). These cases, however, do not contain any analysis of Title VII claims and *Thurman* thus did not provide any legal reasoning or analysis on the issue of Title VII.

Two years before *Thurman*, the Honorable Patrick J. Duggan of this district addressed an

employer's effort to impose a 180-day limitation on a Title VII claim. *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769 (E.D. Mich. 2002) The Court explained that "the EEOC maintains exclusive jurisdiction over the subject matter of the charge for 180 days." *Id.* at 772. The Court denied the motion for summary judgment as to the Title VII claim holding that if the court were to "uphold the six month limitation of action clause as to Plaintiff's Title VII claim, the EEOC's period of exclusive jurisdiction would have the effect of abrogating Plaintiff's ability to bring a Title VII suit." *Id.* Plaintiff submits that this is the only case to include analysis of the issue arising from an employer's effort to apply a 180-day limitation to a Title VII claim.

In reply, Defendants argue that *Thurman*, which was decided after *Lewis*, has not been overturned and remains Sixth Circuit precedent. Moreover, Defendants contend that the holding in *Thurman* clearly encompassed the plaintiff's Title VII and ELCRA claims.

Whether the holding in *Thurman* encompassed any Title VII claims is unclear. The opinion states that the plaintiffs' original complaint that alleged violations of ECLRA, Title VII, 42 U.S.C. § 1981, and various state law tort claims was dismissed due to plaintiffs' counsel's repeated failure to appear and participate in court-ordered conferences. 397 F.3d at 355. The district court permitted reinstatement of the action for good cause within thirty days, but the plaintiffs' did not seek reinstatement or appeal the dismissal. *Id.* Instead, the plaintiffs filed a second lawsuit in state court alleging "the same claims" as the previous suit which was subsequently removed to federal court.

The opening paragraph in *Thurman*, however, enumerates the plaintiffs' claims in the second case as follows: sex discrimination under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101, et seq., race discrimination under 42 U.S.C. § 1981, and negligent hiring/retention, negligent supervision, assault and battery, negligence and gross negligence, as well as loss of

consortium. The only reference to Title VII in the opinion addresses the original complaint in the first case that was dismissed. Moreover, a review of the complaint in the second case, *Thurman v. DaimlerChrysler, Inc.*, E.D. Mich. Case Number 01-73446 ECF No. 1, confirms that no Title VII claim was included. Because there is no other clear precedent regarding a 180-day limitation on Title VII claims, and because the reasoning in *Lewis* is sound, the Court concludes that any period of 180 days or less is preempted by the EEOC's period of exclusive jurisdiction and necessarily precludes any judicial consideration of Plaintiff's claim. *See Lewis*, 241 F. Supp. 2d at 772 (concluding that if the court were to "uphold the six month limitation of action clause as to Plaintiff's Title VII claim, the EEOC's period of exclusive jurisdiction would have the effect of abrogating Plaintiff's ability to bring a Title VII suit."). Defendants' motion for partial summary judgment based on the contractually-shortened statute of limitations will be denied.

**B**

However, in their reply, Defendants note that in order to bring a Title VII lawsuit, a plaintiff must do two things: (1) the plaintiff must timely file a charge of discrimination with the EEOC and (2) the plaintiff must receive, and timely act upon, a "right-to-sue" letter issued by the EEOC. *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989); *see* 42 U.S.C. § 2000e-5(f)(1). A plaintiff cannot bring a Title VII action until he or she has complied with both requirements. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989) *superceded in part on other grounds by* the Civil Rights Act of 1991. The employee-plaintiff may file a civil suit in federal court within 90 days of receipt of notice of final action by the agency on his or her complaint. 42 U.S.C. § 2000e-5(f)(1); *see Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) (right-to-sue letter is a condition precedent to filing claim).

Michigan, as a "deferral state" has a state agency, the Michigan Department of Civil Rights, "with authority to administer state civil rights laws that prohibit unlawful employment practices." *Smith v. Chrysler Fin. Corp.*, 101 F. Supp. 2d 534, 543 (E.D. Mich. 2000). In "deferral states" such as Michigan, a claimant must either file a charge with the EEOC within 180 days after the alleged discrimination occurred, or within 300 days if the claimant has "initially instituted proceedings with a State or local agency with authority to grant relief from such practice." *Lewis*, 241 F.3d at 771 (citing 42 U.S.C. § 2000e-5(e)(1)).

Plaintiff confirmed at oral argument that she has not yet received a "right-to-sue letter" from the EEOC. Indeed, Plaintiff's charge was not filed with the EEOC until after the instant case was filed. "Receipt of a right-to-sue letter from the EEOC is a condition precedent to filing a Title VII action" in federal district court. *Rivers*, 143 F.3d at 1031. Failure to obtain a right-to-sue letter merits dismissal without prejudice. *Dixon v. Ohio Dep't of Rehab. & Corr.*, 181 F.3d 100, 1999 WL 282689, at *1 (6th Cir. Apr. 28, 1999). Because the requirement is not jurisdictional, a plaintiff may cure this defect after filing the complaint by informing the court that she has obtained a right-to-sue letter, but plaintiff must do so before defendant moves for dismissal. *Portis v. State of Ohio*, 141 F.3d 632, 634 (6th Cir. 1998). In other words, the proper time for a defendant to move to dismiss based on plaintiff's failure to obtain a right-to-sue letter is "between the filing of the lawsuit and [plaintiff's] receipt of the letter." *Id.* at 635.

Here, Plaintiff has filed a charge with the EEOC but has not yet received a right-to-sue letter and Defendants have timely moved to dismiss Plaintiff's claim for failure to obtain such a letter. Plaintiff's Title VII failure-to-promote claim will thus be dismissed.

## IV

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment (ECF No. 3) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's Title VII failure-to-promote claim is **DISMISSED WITHOUT PREJUDICE**.

                                           s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge

Dated: December 12, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 12, 2011.

                           s/Tracy A. Jacobs
                           TRACY A. JACOBS